UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICOLE PETTIT, | * |
| Plaintiff, | * |
| v. | * |
| | *   Civil Action No. 21-cv-10568-ADB |
| ANGIODYNAMICS, INC. and NAVILYST MEDICAL, INC., | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this action, which was originally filed in state court, Plaintiff Nicole Pettit brings various state law claims arising from injuries allegedly caused by a defective medical device made by Defendants AngioDynamics, Inc. ("AngioDynamics") and Navilyst Medical, Inc. ("Navilyst," and, together with AngioDynamics, "Defendants"). [ECF No. 1-3]. Currently before the Court are Ms. Pettit's motion for remand, [ECF No. 12], and Defendants' motion to dismiss for lack of personal jurisdiction, [ECF No. 8]. For the reasons set forth below, Ms. Pettit's motion is DENIED, and Defendants' motion is GRANTED. Ms. Pettit's complaint, [ECF No. 1-3], is DISMISSED without prejudice.

I.   **BACKGROUND**

   A.   **Factual Background**

The following facts are taken primarily from the complaint, [ECF No. 1-3], the factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Ms. Pettit is a West Virginia resident. [ECF No. 1-3 at 3].[1] AngioDynamics, and its wholly-owned subsidiary Navilyst, are Delaware corporations.[2] [Id. at 4; ECF No. 1-4 ¶ 6].

In or around 2010, the U.S. Food and Drug Administration authorized Defendants to market and sell an implantable vascular access device called the SmartPort (the "Device"). [ECF No. 1-3 at 5–6]. The Device is designed to deliver medication, intravenous fluids, parenteral nutrition solutions, and blood products directly into the bloodstream. [Id. at 6]. The Device consists of two components: an injection port and a silicone catheter. [Id.]. Due to an alleged design defect, the catheter sometimes separates from the injection port while implanted in a patient. [Id. at 7]. If such separation occurs, and the Device is being used to administer chemotherapy drugs, there can be serious medical consequences. [Id.]. Years before Ms. Pettit was implanted with the Device, Defendants received numerous adverse event reports indicating that the Device was failing because of catheter separation and causing severe injuries. [Id. at 8–9].

On October 19, 2018, Ms. Pettit was implanted with the Device at a hospital in West Virginia. [ECF No. 1-3 at 10]. On February 13, 2019, at a routine chemotherapy session at a hospital in West Virginia, Ms. Pettit's nurses initiated a saline flush before administering her a chemotherapy drug. [Id. at 11]. During the flush, the saline began leaking from Ms. Pettit's chest. [Id.]. After an x-ray revealed that the Device's catheter had become disconnected from the port, Ms. Pettit's doctor recommended that the Device be removed. [Id.]. A few days later, the Device was surgically removed at a hospital in West Virginia. [Id.]. The surgeon who

---

[1] Although it would typically cite to the complaint using paragraph numbers, because Ms. Pettit appears to have used certain paragraph numbers twice, the Court cites to page numbers.

[2] As discussed infra, the parties dispute whether Defendants' principal places of business are in New York or Massachusetts.

removed the Device observed that the catheter was completely disconnected from the injection port. [Id.].

Because of these events, Ms. Pettit experienced significant mental and physical pain and suffering, sustained physical injuries and permanent physical deformities, underwent (and will undergo additional) corrective surgery, and suffered financial and economic losses (including medical expenses and lost wages). [ECF No. 1-3 at 12].

### B.     Procedural Background

Ms. Pettit filed this suit in Middlesex Superior Court on February 12, 2021. [ECF No. 1-3]. On April 5, 2021, Defendants removed the case to this Court, asserting diversity jurisdiction. [ECF No. 1]. On April 12, 2021, Defendants moved to dismiss based on lack of personal jurisdiction. [ECF No. 8]. Ms. Pettit opposed on April 30, 2021, [ECF No. 11], and Defendants replied on June 1, 2021, [ECF No. 17]. Additionally, Ms. Pettit filed a motion for remand on May 5, 2021, [ECF No. 12], which Defendants opposed on May 19, 2021, [ECF No. 16]. On July 22, 2021, Defendants filed a notice of supplemental authority. [ECF No. 20 (notice); ECF No. 20-1 (supplemental authority)].

## II.    MS. PETTIT'S MOTION FOR REMAND

Defendants removed this case based on diversity jurisdiction. See [ECF No. 1 at 2–5]. "Federal diversity jurisdiction is available in cases arising between citizens of different states in which the amount in controversy exceeds $75,000." Rizzi v. 178 Lowell St. Operating Co., 180 F. Supp. 3d 66, 67 (D. Mass. 2016) (citing 28 U.S.C. § 1332(a)). "Diversity jurisdiction 'requires *complete* diversity between the plaintiffs and the defendants in an action.'" Id. (quoting Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 17 (1st Cir. 2008)). Ms. Pettit does not contest that the complete diversity and amount in controversy requirements are met here. Instead, she argues

3

that because Defendants are Massachusetts citizens, removal is precluded under the "forum defendant rule." [ECF No. 13 at 2–7]. Defendants maintain that because they are not Massachusetts citizens, the "forum defendant rule" is inapplicable, and removal was therefore proper. [ECF No. 16 at 8–16].

Where, as here, removal is premised on diversity jurisdiction, it is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "This is known as the 'forum defendant rule.'" DaSilva v. Germany, No. 19-cv-11184, 2021 WL 210788, at *2 (D. Mass. Jan. 21, 2021) (quoting Rizzi, 180 F. Supp. 3d at 68)). "A corporation's citizenship, for diversity jurisdiction purposes, is both the state where it is incorporated and the state 'where it has its principal place of business.'" Celli v. Greenwich Ins. Co., 478 F. Supp. 3d 93, 95–96 (D. Mass. 2020) (quoting 28 U.S.C. § 1332(c)(1)).

Ms. Pettit concedes (and, in fact, specifically alleges) that both AngioDynamics and Navilyst are incorporated in Delaware. See [ECF No. 1-3 at 4]. She also alleges in her complaint that AngioDynamics has its principal place of business in New York and Navilyst has its principal place of business in Massachusetts. See [id.]. Nevertheless, in her briefs, she maintains that both AngioDynamics and Navilyst have a principal place of business in Massachusetts. See [ECF No. 11 at 4]. Although the Court could treat Ms. Pettit's allegation as to the location of AngioDynamics' principal place of business as a binding judicial admission (and focus its analysis solely on Navilyst), see Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992), it need not do so here because, for the reasons below, the Court finds that both AngioDynamics and Navilyst clearly have their principal places of business in New York.

> Several years ago, the Supreme Court established beyond any doubt that federal courts must employ the "nerve center" test to determine the location of a corporation's principal place of business. The test is straightforward. A corporation's "nerve center" (i.e., its principal place of business) is the particular location from which its "officers direct, control, and coordinate the corporation's activities." Generally speaking, this will "be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."

Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 40 (1st Cir. 2016) (citations omitted) (quoting Hertz Corp. v. Friend, 559 U.S. 77, 80–81, 92–93 (2010)). "At its heart, the nerve center test is an inquiry to find the one location from which a corporation is ultimately controlled." Id. at 41.

A straightforward application of the nerve center test leads to the conclusion that Defendants' principal places of business are in New York. According to the affidavit filed by Stephen A. Trowbridge, AngioDynamics' Executive Vice President and CFO: (1) Navilyst is a wholly-owned subsidiary of AngioDynamics, [ECF No. 1-4 ¶ 6]; (2) Navilyst's U.S. operations are "entirely carried out and controlled by AngioDynamics," [id. ¶ 9]; (3) the individuals working on Navilyst's behalf in the United States are actually AngioDynamics' employees, [id. ¶ 10]; (4) AngioDynamics' chief executives (including its CEO, CFO, and General Counsel) and its accounting, legal, and human resources departments are based in New York, [id. ¶ 8]; and (5) all significant corporate decisions, for both AngioDynamics and Navilyst, are made, or are reviewed and approved, by executives based in New York, [id. ¶ 11]. Thus, based on this uncontroverted evidence, the Court finds that Defendants are "ultimately controlled" from New York. See Harrison, 811 F.3d at 41.

Ms. Pettit advances evidence of her own, purportedly demonstrating that Massachusetts, rather than New York, is Defendants' principal place of business. [ECF No. 13 at 3–7].

5

First, Ms. Pettit points to a form filed with the New York Secretary of State indicating that Navilyst has a "principal executive office" in Marlborough, Massachusetts. [ECF No. 13-3]. That form, however, does not speak to where Navilyst's activities are actually controlled from (and certainly does not undercut the sworn statements in Mr. Trowbridge's affidavit).

Second, Ms. Pettit cites to documents purportedly demonstrating that some of Defendants' employees live in Massachusetts. See [ECF No. 13-4]. Where employees live is immaterial to the instant analysis, which focuses on the location from where a company is controlled. Further, even if the employees Ms. Pettit identifies do, in fact, work in Massachusetts, they are not the sort of high-level officers who direct, control, and coordinate Defendants' activities.[3] Compare [id. (identifying J. Serna, B. Davis, and M. Moore as Massachusetts residents)], with [ECF No. 11-7 (indicating that J. Serna is a Senior Vice President, B. Davis is an unspecified "executive" in "business development, finance, strategy, and general management," and M. Moore is a Senior Vice President and Chief Human Resources Officer)]; see also [id. (identifying other low-level employees purportedly working in Massachusetts)]. Those high-level officers, such as the CEO and CFO, are based in New York. See [ECF No. 1-4 ¶ 8, 11].

Third, Ms. Pettit notes that certain of Defendants' regulatory filings list a Massachusetts address. [ECF No. 13 at 4]; see also [ECF Nos. 13-7, 13-8, 13-9]. At most, the cited documents

---

[3] Ms. Pettit asserts that James Clemmer, AngioDynamics' CEO, "lives in Hopkinton, Massachusetts and oversees the operations of the company from Massachusetts." [ECF No. 11 at 6]. Although the documents that Ms. Pettit's cites do suggest that Mr. Clemmer lives in Massachusetts, see [ECF Nos. 11-4, 11-5, 13-4 at 2], they provide no information regarding from where he oversees Defendants' operations. Thus, beyond Ms. Pettit's conclusory assertion that Mr. Clemmer "oversees the operations of the company from Massachusetts," which the Court need not credit, there is nothing to contradict Mr. Trowbridge's sworn statement that Mr. Clemmer is based in New York, [ECF No. 1-4 ¶ 8].

simply confirm that Defendants conduct business in Massachusetts; they do not indicate that their principal place of business is here.

Finally, Ms. Pettit posits that because AngioDynamics asserted, in an unrelated litigation in 2014 (two years after it acquired Navilyst), that it was a Massachsuetts company, Defendants are estopped from taking a contrary position here. [ECF No. 11 at 5]. This argument is unconvincing for multiple reasons. In the documents that Ms. Pettit points to, AngioDynamics did not actually make any representations regarding its principal place of business. See [ECF No. 11-2 (listing Middlesex as AngioDynamics' "county of residence"); ECF No. 11-3 (noting that AngioDynamics "reside[d]" in the eastern division of Massachusetts")]. To the contrary, in the complaint that AngioDynamics filed in the same litigation, it specifically alleged that its principal place of business was in New York. See Complaint ¶ 1, AngioDynamics, Inc. v. Norfolk Med. Prods., Inc., No. 14-cv-12246 (D. Mass. May 21, 2014), ECF No. 1 ("AngioDynamics is a Delaware corporation having its principal place of business at 14 Plaza Drive, Latham, New York 12110."). Moreover, because it is black-letter law that jurisdiction depends on the state of things when the action was brought, see Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570 (2004), an assertion that AngioDynamics made in 2014 is irrelevant to the Court's analysis of where its principal place of business was when this case was filed in 2021.

In sum, although Ms. Pettit repeatedly asserts that Defendants' principal places of business are in Massachusetts, see, e.g., [ECF No. 11 at 4, 6, 10; ECF No. 13 at 1, 2, 4, 5], the evidence belies her assertions. Because the Court finds that Defendants' principal places of

business are not in Massachusetts, the forum defendant rule does not preclude removal.

Ms. Pettit's motion for remand, [ECF No. 12], is therefore <u>DENIED</u>.[4]

### III. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants maintain that this case must be dismissed because the Court lacks personal jurisdiction over them. [ECF No. 9]. Ms. Pettit counters that because exercising personal jurisdiction over Defendants comports with both the Massachusetts long-arm statute and the U.S. Constitution, Defendants' motion must be denied. For the reasons below, the Court finds that it lacks personal jurisdiction over Defendants.

#### A. Legal Standard

Ms. Pettit bears the burden of establishing that jurisdiction exists over Defendants. <u>A Corp. v. All Am. Plumbing, Inc.</u>, 812 F.3d 54, 58 (1st Cir. 2016) (citing <u>Phillips v. Prairie Eye Ctr.</u>, 530 F.3d 22, 26 (1st Cir. 2008)). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination." <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, the plaintiff must proffer "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." <u>A Corp.</u>, 812 F.3d at 58 (quoting <u>Prairie Eye Ctr.</u>, 530 F.3d at 26). "[P]laintiffs may not rely on unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of

---

[4] Judge Casper recently denied a remand motion nearly identical to this one, in which a plaintiff—who, like Ms. Pettit, was allegedly injured by a defective Device—sought remand on the basis that AngioDynamics and Navilyst had their principal places of business in Massachusetts. See <u>Kingston v. AngioDynamics, Inc.</u>, No. 21-cv-10234, 2021 WL 3022320, at *3–4 (D. Mass. July 16, 2021). The plaintiff in that case, who is represented by the same attorney that represents Ms. Pettit here, made arguments and offered evidence nearly identical to the arguments and evidence that Ms. Pettit has made and offered here.

specific facts" supporting jurisdiction. Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The Court takes as true whatever properly documented facts a plaintiff proffers, construes those facts in the light most favorable to the plaintiff, and considers facts put forward by the defendant only to the extent they are uncontradicted. See Prairie Eye Ctr., 530 F.3d at 26; Platten, 437 F.3d at 134.

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). "Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the due process clause of the Constitution." Kingston, 2021 WL 3022320, at *5 (citing Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997)).

**B.   Jurisdiction Under the Massachusetts Long-Arm Statute**

"Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017). Section 3 of the Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from" various activities within or outside of the Commonwealth. Mass. Gen. Laws ch. 223A, § 3.

9

Ms. Pettit relies on § 3(a) of the Massachusetts long-arm statute, see [ECF No. 11 at 8–9], which provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth . . . ." Mass. Gen. Laws ch. 223A, § 3(a). Section 3(a)'s "reference to 'transacting any business' does not require that the defendant have engaged in commercial activity. That language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (quoting Ross v. Ross, 358 N.E.2d 437, 439 (Mass. 1976)). "[T]he defendant's involvement need not be major, as 'just a few acts on [his] part can often suffice to satisfy [subsection (a)]'s threshold for transacting business.'" Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008) (quoting Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D. Mass. 2003)). Although "transacting business" "has been construed broadly," Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994) (citations omitted), the test "is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party," Lyle Richards, 132 F.3d at 112. "The 'arising from' clause in [the Massachusetts long-arm statute] is . . . generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test." Workgroup Tech. Corp., 246 F. Supp. 2d at 112. "[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Tatro, 625 N.E.2d at 553). The arising from inquiry asks whether "the defendant's contacts with the Commonwealth constitute the first step in a train of events that

result[ed] in the . . . injury." Id. (internal quotation marks omitted) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 114).

As to the first clause, Defendants undoubtedly transact business in Massachusetts. Defendants have an office in Marlborough, Massachusetts and a number of employees who work in Massachusetts. See [ECF Nos. 11-7, 13-4, 13-5]. As to the second clause, Ms. Pettit's claims do not arise from Defendants' business transactions in Massachusetts. Ms. Pettit argues that her claims are tied to Defendants' business activities in Massachusetts because "[b]ut for Defendants' actions and omissions occurring within the Commonwealth, the [Device] never would have made it to the medical facility where it was ultimately implanted in [Ms. Pettit] and caused her injury." [ECF No. 11 at 9]. Ms. Pettit cannot, however, rely only on self-serving, conclusory statements to establish jurisdiction. See Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020). Rather, she must adduce specific evidence suggesting that Defendants' business activities in Massachusetts were the first step in a chain leading to her injuries. She has not done so. Viewed favorably, Ms. Pettit's evidence demonstrates that Defendants have a presence in Massachusetts and conduct some business here. Importantly, none of her evidence suggests that any of Defendants' Massachusetts business activities actually relate to the Device or her claims. Although Ms. Pettit avers that "research, development, design, testing, post-market surveillance, and regulatory compliance activities" concerning the Device took place in Massachusetts, [ECF No. 11 at 9]; see also [ECF No. 13 at 5 ("the activities which are essential to [the Device's] existence occur also occur [sic] within the Commonwealth, specifically, that the [Device] was researched and developed and made its way into the stream of commerce through Navilyst's sales agents, all headquartered in Marlborough, Massachusetts")],

she has adduced no evidence to support her assertion.[5] Notably, Mr. Trowbridge's affidavit establishes that all significant corporate decisions are made in New York and all U.S. products (including the Device) are manufactured in New York. [ECF No. 1-4 ¶¶ 11–12]. Against this backdrop, Ms. Pettit has failed to show the required link between her claims and Defendants' Massachusetts contacts. Accordingly, the Court does not have jurisdiction over Defendants pursuant to the Massachusetts long-arm statute.[6]

### C. Jurisdiction Under the U.S. Constitution

Although the Court could stop the analysis here, it will briefly consider jurisdiction under the U.S. Constitution in the interests of a comprehensive record.

---

[5] None of Ms. Pettit's exhibits demonstrate that Defendants' Device-related activities took place in Massachusetts. See [ECF Nos. 11-1, 11-2, 11-3, 11-4, 11-5, 11-6, 11-7, 11-8, 11-9, 11-10, 11-11, 11-12, 13-1, 13-2, 13-3, 13-4, 13-5, 13-6, 13-7, 13-8, 13-9, 13-10, 13-11, 13-12, 13-13, 13-14]. At most, they establish that Defendants (1) have some marketing, research and development, and regulatory personnel located in Massachusetts, see [ECF No. 11-7 at 2–6], and (2) listed a Massachusetts address in certain communications with customers and/or regulatory bodies, see [ECF Nos. 11-8, 11-9, 11-10, 11-11, 11-23]. Notably, they do not indicate that Defendants designed, tested, made, or marketed the Device in and/or from Massachusetts. Further, even the factual allegation from her complaint on which she relies, see [ECF No. 13 at 10], does not support her position. Specifically, it is oddly worded and does not directly allege that Defendants designed, manufactured, advertised, marketed, or sold the Device in Massachusetts. See [ECF No. 1-3 at 5 ("At all times hereinafter mentioned, Defendants were engaged in the business of designing, manufacturing, advertising, marketing, and selling Vascular Access Devices including the [Device], and in pursuit of this business, transacted business within the Commonwealth of Massachusetts and contracted to provide goods and services in the Commonwealth of Massachusetts.")]. Ultimately, Ms. Pettit relies on her attorneys' arguments and unsworn representations, which are insufficient to establish jurisdiction. See Kuan Chen, 956 F.3d at 56.

[6] In Kingston, Judge Casper reached the same conclusion regarding the Massachusetts long-arm statute based on nearly identical evidence and arguments. See Kingston, 2021 WL 3022320, at *5. The Court notes that the plaintiff in Kingston has filed a motion for reconsideration that is currently pending. See Motion for Reconsideration, Kingston v. AngioDynamics, Inc., No. 21-cv-10234 (D. Mass. Aug. 13, 2021), ECF No. 33.

Courts may exercise two types of personal jurisdiction under the Fourteenth Amendment: general and specific. The Court discusses each in turn.

### 1. General Jurisdiction

"[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render [a person] essentially at home in the forum State.'" Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Although the "paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of business," in some cases "a defendant corporation's general business operations in a state in which it is neither incorporated nor headquartered 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Kuan Chen, 956 F.3d at 57 (quoting Daimler, 571 U.S. at 139 n.19).

Here, it is undisputed that AngioDynamics and Navilyst are both incorporated in Delaware, and the Court has already determined that both have their principal place of business in New York. Accordingly, the Court can exercise general personal jurisdiction over Defendants only if their "general business operations" in Massachusetts are "so substantial and of such a nature as to render [them] at home" here. Kuan Chen, 956 F.3d at 57 (quoting Daimler, 571 U.S. at 139 n.19). Even though Defendants conduct business here and have an office and employees here, their contacts with Massachusetts are not substantial enough to render them subject to general personal jurisdiction.[7] Cf. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447–48 (1952) (finding that a company was subject to general jurisdiction in Ohio where the

---

[7] Judge Casper reached the same conclusion based on nearly identical argument and evidence. Kingston, 2021 WL 3022320, at *6.

company had ceased operating in the Philippines because of World War II and the president of the company relocated to Ohio and conducted business from an office there); see Daimler, 571 U.S. at 129 (describing Perkins as the "textbook case of general jurisdiction").

### 2. Specific Jurisdiction

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Swiss Am. Bank, Ltd., 274 F.3d at 618 (quoting Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)). For the Court to exercise specific personal jurisdiction over Defendants consistent with the Due Process Clause, each of three conditions must be satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the [Defendants'] forum-state activities. Second, the [Defendants'] in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the [Defendants'] involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Daynard, 290 F.3d at 60 (quoting Foster-Miller, 46 F.3d at 144). The inquiry "is 'not susceptible [to] mechanical application,'" PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (quoting Kulko v. Superior Ct. of Cal., 436 U.S. 84, 92 (1978)), rather, "[e]ach case requires an individualized weighing of the material facts," United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485–86 (1985)).

Here, Ms. Pettit's claims do not arise out of, or relate to, Defendants' activities in Massachusetts. As noted earlier, although Ms. Pettit asserts that Defendants "conduct business activities in Massachusetts related to the [Device], including research, development, design, testing, post-market surveillance, and regulatory compliance activities," [ECF No. 11 at 9], she has failed to offer evidence to support her assertion. Further, all key events related to this case

14

occurred outside of Massachusetts. The Device was manufactured in New York, [ECF No. 1-4 ¶ 17], and Ms. Pettit lives, was implanted with the Device, and was allegedly injured, in West Virginia, [ECF No. 1-3 at 3, 10–12]. Thus, based on the record evidence, there is no perceptible connection between the work that Defendants do in Massachusetts and this case. See Ford Motor Co. v. Mont. Eighth Judicial Court, 141 S. Ct. 1017, 1025 (2021) (noting that for specific personal jurisdiction to attach, "there must be 'an affiliation between the forum and the underlying controversy'" (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty., 137 S. Ct. 1773, 1780 (2017))). In the absence of such a connection, the Court finds that Ms. Pettit has failed to satisfy the relatedness prong of the specific personal jurisdictional analysis.[8]  See Kingston, 2021 WL 3022320, at *7–8 (finding that plaintiff, who lived in Kentucky and was allegedly injured by the Device there, had failed to demonstrate that AngioDynamics and Navilyst were subject to specific personal jurisdiction in Massachusetts).

Because a plaintiff seeking to establish specific personal jurisdiction must satisfy all three prongs, see Daynard, 290 F.3d at 60, and Ms. Pettit has failed to satisfy the first, the Court need not consider the other two.

### D.     Jurisdictional Discovery

Ms. Pettit argues that "[s]hould this Court find [her] proffered facts insufficient to support prima facie finding of jurisdiction at this stage, jurisdictional discovery is warranted." [ECF No.

---

[8] Ms. Pettit's reliance on Ford Motor Co., see [ECF No. 11 at 13], is misplaced. In that case, the Supreme Court held that "[w]hen a company . . . serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." 141 S. Ct. at 1022. Here, Ms. Pettit is not seeking to sue Defendants in her home state or the state where she was injured. For that reason, the "relationship among the defendant, the forum[], and the litigation" that the Supreme Court concluded was "close enough to support specific jurisdiction" in Ford Motor Co., id. at 1032, does not exist here. See also Kingston, 2021 WL 3022320, at *7–8 (distinguishing Ford Motor Co.).

11 at 10]. The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" Swiss Am. Bank, 274 F.3d at 625 (quoting Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997)). "However, that entitlement is not absolute. . . . [E]ven when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." Id. at 625–26 (citations and internal quotation marks omitted). Further, "[i]n addition to making a colorable claim, it is also incumbent upon the plaintiff to 'present facts to the court which show why jurisdiction would be found if discovery were permitted.'" Rain ex rel. Crandall v. Conn. Gen. Corp., No. 17-cv-30115, 2019 WL 7604856, at *7 (D. Mass. Aug. 6, 2019) (quoting Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007)).

Here, Ms. Pettit has failed to make a "colorable case for the existence of" personal jurisdiction, and the Court declines to exercise its discretion to grant jurisdictional discovery. Swiss Am. Bank, 274 F.3d at 625 (citations and internal quotation marks omitted). Given Mr. Trowbridge's affidavit, discovery is unlikely to result in a finding that the Court has personal jurisdiction over Defendants. Notably, even if Ms. Pettit were to obtain evidence to support her currently-unsupported assertion that Defendants conducted "research, development, design, testing, post-market surveillance, and regulatory compliance" activities related to the Device in Massachusetts, specific personal jurisdiction would still not lie. See Kingston, 2021 WL 3022320, at *9 ("[Plaintiff]'s argument that certain operations occurred in Defendants' Massachusetts location, and that these operations led to the ultimate—and allegedly flawed—design of the [Device], which led to its eventual manufacture in New York, which led to its

16

distribution to and subsequent harm in Kentucky, is too tenuous to state a colorable claim."). Accordingly, Ms. Pettit's request for jurisdictional discovery is denied.

### E. Transfer

Although this Court may not exercise personal jurisdiction over Defendants, the Court could transfer the case to another district to cure a lack of jurisdiction. See 28 U.S.C. § 1631. Nevertheless, because (1) neither party has suggested transfer, (2) Ms. Pettit originally sought to litigate her claims in state court, and (3) there appear to be multiple potentially appropriate fora (including federal and state courts in West Virginia, New York, and Delaware), the Court will dismiss the case without prejudice to allow Ms. Pettit to file elsewhere (if she wishes to do so).

## IV.  CONCLUSION

For the reasons set forth above, Ms. Pettit's motion for remand, [ECF No. 12], is DENIED, and Defendants' motion to dismiss for lack of personal jurisdiction, [ECF No. 8], is GRANTED.  Ms. Pettit's complaint is DISMISSED without prejudice.

**SO ORDERED.**

September 28, 2021                                         /s/ Allison D. Burroughs
                                                           ALLISON D. BURROUGHS
                                                           U.S. DISTRICT JUDGE